**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ROBERT FLEMING, JOHN OESTREICH,** | § | |
| **and DEREK EDWARDS**, | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 4:08-CV-100** |
| | § | |
| **vs.** | § | |
| | § | |
| **FRISCO FAMILY SERVICES CENTER,** | § | **Jury Demanded** |
| **INC.** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**COME NOW** the Plaintiffs Robert Fleming, John Oestreich, and Derek Edwards (hereinafter collectively referred to as "Plaintiffs") and in support of their cause of action allege as follows:

## I.   PARTIES

1.      Plaintiff Robert Fleming ("Fleming") is a resident of the State of Texas.

2.      Plaintiff John Oestreich ("Oestreich") is a resident of the State of Texas.

3.      Plaintiff Derek Edwards ("Edwards") is a resident of the State of Texas.

4.      Defendant Frisco Family Services Center, Inc. ("FFSC" or "Defendant") is a corporation organized under the laws of the state of Texas and based in Frisco, Texas.  FFSC may be served by serving the registered agent of the corporation, Paula Roman Ouellette, 7673 Fossil Ridge Dr., Frisco, Texas 75034.

## II.   JURISDICTION AND VENUE

5.      This Court has jurisdiction over this case because Plaintiffs have asserted claims under federal law, specifically 42 U.S.C. § 1981 *et seq.* and 42 U.S.C. § 2000e *et seq.*

6. Venue properly lies in this Court because all acts and omissions giving rise to this claim took place in Collin County which is in the District and Division in which suit has been filed.

### III.    FACTS SUPPORTING PLAINTIFFS' CLAIMS

7. Defendant owns and operates a resale store in Frisco, Texas (the "Resale Store").

8. Oestreich began his employment with Defendant on or about February 12, 2007 as the Manager of the Resale Store.

9. Shortly after beginning his employment with Defendant, Oestreich met Mary Ellen Loughren ("Loughren"), an FFSC board member. In her position on the Board of Directors, Loughren had oversight of the Resale Store. Loughren also regularly volunteered at the Resale Store. Upon information and belief, Loughren volunteered at the Resale Store to monitor and scrutinize the Resale Store's activities and Oestreich's actions. No other upper-level FFSC employee was monitored in this way by a board member.

10. Loughren also regularly questioned Oestreich's activities and inquired whether Oestreich received approval from the FFSC Board of Directors. Oestreich contacted his direct supervisor, Executive Director Jill Cumnock ("Cumnock") regarding Loughren's comments and actions. Cumnock advised Oestreich he had day-to-day control over the Resale Store, but Oestreich "needed to learn how to put up with" Loughren.

11. Oestreich hired Fleming on or about June 5, 2007 as the Assistant Manager of the Resale Store.

12. On or about June 18, 2007, Oestreich hired Edwards as the Volunteer Coordinator at the Resale Store. Oestreich, Fleming, and Edwards all regularly worked with Loughren.

13.     Fleming met Loughren shortly after beginning his employment with Defendant. Shortly after meeting Fleming, Loughren made comments suggesting she intended to target a manager to be fired (Oestreich, presumably).  Although Fleming considered these comments unusual and unprofessional, Fleming continued with his employment.  Fleming also informed Oestreich about these comments.

14.     In addition to her comments about managers, Loughren made several racially derogatory comments about Hispanics in Fleming's presence.  Loughren commented that Hispanics were "thieves" and the Resale Store had to "keep prices low" so Hispanics could shop there.  Oestreich, a Hispanic male, also heard some of these comments.  On one occasion, Oestreich asked Loughren why the FFSC Board had no minorities.  Loughren responded that minorities were hard to find because "everybody's got them already."

15.     After Fleming heard Loughren's racial comments and realized Loughren's clear dislike for minorities, Fleming told Loughren he did not appreciate the comments and he wanted Loughren to stop.  Specifically, Fleming informed Loughren that Fleming was engaged to a Hispanic woman and the two had a child together.

16.     Immediately after Fleming complained to Loughren, Loughren began overly scrutinizing Fleming's work.

17.     On or about October 8, 2007, Loughren asked Edwards about a vehicle parked near the Resale Store's donation line.  After Edwards told Loughren the vehicle belonged to Fleming, Loughren said "managers that park there are thieves."  Edwards related Loughren's comment to Fleming and Fleming immediately discussed the comments with Oestreich. Oestreich subsequently met with Loughren regarding the comments.  When Fleming arrived at the Resale Store the following day, Loughren confronted Fleming on the sales floor in front of

Oestreich and several customers. In an aggressive and rude manner, Loughren denied she made the comments about Fleming and told Fleming he should bring his issues to her, not Oestreich. Loughren's directive, however, explicitly contradicted Defendant's own Open Door Policy.

18. After the incident regarding Loughren's comments, Loughren increased her scrutiny of Fleming's and Oestreich's work. Loughren appeared on the donation line because Fleming and Oestreich "were not operating it correctly." Loughren also attempted to change Oestreich's and Fleming's directives to their employees. Furthermore, Fleming learned Loughren questioned Resale Store employees in an attempt to find negative information on Fleming and Oestreich. Loughren told at least one Resale Store employee he "could not trust" Fleming and Oestreich.

19. As a result of Loughren's discriminating and harassing behavior, Fleming and Oestreich requested a meeting to discuss Loughren's recent actions and comments. On or about December 13, 2007, Fleming and Oestreich attended a meeting with Cumnock, Paula Ouellette ("Ouellette"), President of the FFSC Board of Directors, and Loughren.

20. When Fleming and Oestreich arrived for the meeting, Cumnock told Fleming to wait outside while Cumnock, Ouellette, and Loughren spoke with Oestreich. Cumnock said they would hear Fleming's concerns after speaking with Oestreich. Even though Oestreich and Fleming both requested the meeting to discuss Loughren's actions, Cumnock, Ouellette, and Loughren used the meeting to inform Oestreich the reasons why they believed Oestreich managed the store improperly.

21. After Oestreich finished, Cumnock, Ouellette, and Loughren told Oestreich to inform Fleming they did not wish to speak to him. Despite Defendant's Open Door Policy,

Fleming never met with Cumnock, Ouellette, and Loughren. Furthermore, Cumnock, Ouellette and Loughren never provided Oestreich the opportunity to raise his and Fleming's concerns.

22.     As a result of the ongoing issues at FFSC, on or about December 14, 2007, Oestreich told Cumnock he planned to resign his position in February 2008. Oestreich provided Cumnock with a draft separation agreement listing February 28, 2008 as his last day of employment. Oestreich made it clear he only intended to resign if FFSC accepted the terms of his proposed separation agreement.

23.     On or about December 19, 2007, Oestreich conducted Fleming's six-month performance review. Oestreich rated Fleming as "exceeds expectations."

24.     After conducting Fleming's review, Oestreich instructed Fleming to move a processing table to the processing center and move a linen workstation back to the Resale Store. Oestreich then left for a meeting with Cumnock. Immediately after Oestreich left, Loughren began monitoring Fleming's activities. Loughren demanded Fleming cease moving the tables. Previously, Oestreich told Fleming that Loughren could not override Oestreich's directives. Based on Oestreich's direction, Fleming told Loughren that Oestreich, his supervisor, told him to move the tables and thus Fleming intended to move them.

25.     Upon information and belief, Loughren contacted Cumnock immediately after she confronted Fleming. As Oestreich returned to the Resale Store, Cumnock called Oestreich's cell phone and told him to terminate Fleming due to the table incident. Oestreich informed Cumnock that he instructed Fleming to move the tables and thus Fleming was following his manager's orders. Cumnock then directed Oestreich to fire Fleming for a previously-resolved incident.

26.     When Oestreich returned to the Resale Store, Fleming apprised him of the incident with Loughren. Oestreich then told Fleming that Cumnock instructed Oestreich to

terminate Fleming. Fleming asked to speak with Cumnock. Oestreich called Cumnock on Fleming's behalf and requested a meeting. Cumnock told Oestreich she would speak to Fleming within fifteen minutes. After five minutes, Cumnock called and told Oestreich she had no desire to speak with Fleming because it would not change her mind. As a result, Cumnock again refused to abide by Defendant's Open Door Policy.

27. On or about December 19, 2007, Oestreich, at Cumnock's direction, terminated Fleming for "insubordination."

28. On or about December 24, 2007, Fleming spoke with Ron Adamo ("Adamo"), FFSC's Human Resources Director. Adamo apologized for Fleming's termination and stated Cumnock never consulted Adamo regarding the issue. Adamo further stated Cumnock should not have terminated Fleming.

29. On or about December 30, 2007, Ouellette and Cumnock notified Oestreich they were "accepting his resignation effective immediately." The company did not, however, agree to Oestreich's proposed separation agreement, which was the only resignation Oestreich offered. Furthermore, Oestreich previously announced his intention to resign at the end of February, but Ouellette and Cumnock declared his resignation effective December 30, 2007 because it was better to start the New Year "fresh." In direct contradiction of this statement, however, Ouellette and Cumnock allowed another FFSC upper-level employee, Schuyler Stuckey, to finish his employment at the end of January as outlined in his December resignation letter.

30. Upon Oestreich's termination, Loughren became the Resale Store Interim Manager. Upon information and belief, Loughren is still the Interim Manager.

31. Shortly after assuming the Interim Manager position, Loughren terminated Edwards, a black male. Edwards supported Fleming and Oestreich as they opposed Loughren's

discriminatory behavior. On one previous occasion, Edwards notified Fleming about Loughren's derogatory comments toward Fleming. Furthermore, Edwards was aware of Loughren's repeated racially derogatory comments. Loughren told Edwards he was terminated because the Board of Directors eliminated his position. Loughren did not, however, offer Edwards another position at the Resale Store even though there were multiple existing openings for which Edwards was trained and qualified.

## IV.    STATEMENT OF CLAIMS

### *RACIAL DISCRIMINATION UNDER 42 U.S.C. § 1981 AND 42 U.S.C. § 2000e-2: OESTREICH & EDWARDS*

32.    Plaintiffs incorporate Paragraphs 1 through 31 hereinabove as if fully set forth herein at length.

33.    42 U.S.C. § 1981 and 42 U.S.C. § 2000e-2 prohibit employment discrimination based on race.

34.    Defendant discriminated against Plaintiffs Oestreich and Edwards in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-2 because of Oestreich's and Edwards' race. Defendant discriminated against Plaintiff Fleming because he, a white male, befriended and married non-whites.

35.    As summarized above, Loughren, the Board member charged with oversight of the Resale Store, made several racially derogatory remarks and exhibited a dislike for minorities. Loughren also scrutinized Oestreich's work and undermined his authority. Loughren initially confided in Fleming, but began to discriminate against him once he made known his friendship with and impending marriage to non-whites. Defendant ultimately terminated Oestreich despite a previous practice of allowing an employee to work until his proposed resignation date. Defendant terminated Fleming using a closed matter as an alleged basis. Defendant also

terminated Edwards on the sole basis his position was eliminated. Loughren did not offer Edwards another position at the Resale Store.

36.     As a result of Defendant's actions, Oestreich and Edwards suffered and continue to suffer damages and they hereby sue.

37.     Oestreich and Edwards further request their attorneys' fees under 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e-5(k).

### *RETALIATION UNDER 42 U.S.C. § 1981 AND 42 U.S.C. § 2000e-3: OESTREICH, FLEMING & EDWARDS*

38.     Plaintiffs incorporate Paragraphs 1 through 37 hereinabove as if fully set forth herein at length.

39.     42 U.S.C. § 1981 and 42 U.S.C. § 2000e-3 prohibit retaliation against any employee for opposing unlawful employment practices.

40.     As summarized above, Oestreich attempted to complain to his supervisors about Loughren's racially derogatory comments and her harassing actions. At Oestreich's scheduled meeting, however, his supervisors informed Oestreich he was not managing the Resale Store properly. Loughren increased her scrutiny of Oestreich and Defendant ultimately terminated Oestreich. Furthermore, Edwards supported Oestreich and Fleming in their attempts to end Loughren's racially derogatory comments and harassing actions. After Loughren assumed the Interim Manager position, she terminated Edwards. Finally, Loughren terminated Edwards solely on the basis of his support for Oestreich and Fleming.

41.     As a result of Defendant's actions, Oestreich, Fleming, and Edwards suffered and continue to suffer damages and they hereby sue.

42.     Oestreich, Fleming, and Edwards further requests their attorneys' fees under 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e-5(k).

### V. REMEDIES

43.    Wherefore, Plaintiffs pray that the Court grant them the following relief:

    a.    Compensatory damages against Defendant as a consequence of Defendant's unlawful actions, in a precise amount to be determined by Plaintiffs' lost wages, i.e. backpay and front pay;

    b.    Exemplary damages in an amount to be determined by the jury;

    c.    Prejudgment and post-judgment interest;

    d.    Reasonable attorneys' fees, expenses and costs of the action; and

    e.    Such other relief as the Court shall deem just and proper.

### VI. JURY TRIAL DEMAND

44.    Plaintiffs demand a trial by jury on all issues of facts and damages raised in this case.

### VII. CONDITIONS PRECEDENT

45.    All conditions precedent to Plaintiffs' right to recover have been performed or have occurred.    Plaintiffs filed Charges of Discrimination with the Texas Workforce Commission, Civil Rights Division and the U.S. Equal Employment Opportunity Commission.

### VIII. PRAYER

46.    WHEREFORE, cause having been shown, Plaintiffs pray for judgment against Defendant as follows:

    a.    For an Order awarding Plaintiffs compensatory damages as defined above;

    b.    For an Order awarding Plaintiffs exemplary damages;

    c.    For an Order awarding Plaintiffs the costs of the action;

    d.    For an Order awarding Plaintiffs their attorneys' fees;

e.      For an Order awarding pre-judgment and post-judgment interest at the

        highest rates allowed by law; and

f.      For an Order granting such other and further relief as may be necessary

        and appropriate.

                                        Respectfully submitted,

                                        /s/ Michael E. Coles_____
                                        Michael E. Coles, Lead Attorney
                                        State Bar No. 24007025
                                        Dustin A. Paschal
                                        State Bar No. 24051160
                                        THE COLES FIRM P.C.
                                        One Energy Square
                                        4925 Greenville Ave.
                                        Suite 1250
                                        Dallas, Texas 75206
                                        (214) 443-7860 (Office)
                                        (972) 692-7145 (Facsimile)

                                        **ATTORNEYS FOR PLAINTIFFS
                                        ROBERT FLEMING, JOHN
                                        OESTREICH, AND DEREK EDWARDS**


                        **<u>CERTIFICATE OF SERVICE</u>**

        I, the undersigned counsel, hereby certify that on May 22, 2008, I served a copy of
Plaintiffs' First Amended Complaint on Defendant's counsel of record via facsimile.



                                        /s/ Michael E. Coles_____
                                        Michael E. Coles
                                        Dustin A. Paschal